UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ALEXZANDER SIDDAR B., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 1:20-CV-00559-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Alexzander Siddar B.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 19) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a twenty-two-year-old man with a history of Marfan syndrome and intellectual disorder. AR[2] 20. Petitioner received disability benefits as a child due to having sensory processing and learning disorders. AR 69. After he turned eighteen, as legally required,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit. Fed. R. Civ. P. 25(d); see also 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 18).

**MEMORANDUM DECISION AND ORDER - 1**

the Social Security Administration reassessed Petitioner's eligibility for disability benefits under the standards applied to adults. AR 18. The Administration determined that Petitioner did not qualify as disabled under these standards and ceased paying Petitioner benefits. *Id.* Petitioner contested this decision and requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* On July 3, 2019, the claim went to a hearing before ALJ Christopher Inama. *Id.* On August 28, 2019, the ALJ issued a decision that was unfavorable to Petitioner. AR 15-33.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 4-10.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises a single point of error: that the ALJ erred in adopting an RFC that conflicted with the medical opinions gauging Petitioner's mental-health limitations. Pt.'s Br. at 1 (Dkt. 19).[3]

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

---

[3] Petitioner does not raise any challenge to the ALJ's findings regarding his physical health or limitations, including his Marfan syndrome. *See generally* Pt.'s Br. (Dkt. 19). Any such challenges have, consequently, been waived. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 4**

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: Marfan Syndrome and intellectual disorder.  AR 20.  The ALJ determined that these impairments affect

**MEMORANDUM DECISION AND ORDER - 5**

Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner is limited to sedentary work and can only perform "simple, routine tasks, with only simple work related decisions and few workplace changes." AR 13.  Petitioner has no past relevant work.  AR 31.  Based on the testimony of a vocational expert, the ALJ concluded that Petitioner's limitations would not prevent him from performing a range of work, including working as an addressing clerk, a food and beverage order clerk, or a document preparer.  AR 32.  The ALJ, therefore, found that Petitioner was not disabled.  AR 32-33.

## DISCUSSION

Petitioner frames his sole challenge on appeal as a claim that the ALJ improperly adopted an RFC that conflicted with the "unanimous" mental-health-related medical opinions of record. Pt.'s Br. at 1 (Dkt. 19).

As Respondent point out, however, the medical providers who issued opinions regarding Petitioner's mental health did not uniformly agree that Petitioner was unable to work.  The reviewing agency doctors, Dr. Dave Sanford and Dr. Mack Stephenson, found that Petitioner remained intellectually and psychologically capable of performing simple, routine work.  AR 75-76, 424.  Petitioner implicitly acknowledges this conflict throughout the briefing.  Pt.'s Br. at 20 (Dkt. 19); *see also id.* at 5 (discounting the agency opinions as older and based only on part of the medical record) and *id.* at 10-11 (arguing that it is enough to show reversible error if the Court finds that the opinions of the treating and consulting providers were "at least as persuasive" as the state agency reviewing doctors).  Read as a whole, Petitioner's appeal is best understood as arguing that the ALJ erred in crediting the opinions of the state agency reviewing consultants, Dr. Sanford and Dr. Stephenson, over the other doctors and providers.

**MEMORANDUM DECISION AND ORDER - 6**

I. <u>The Standard for Reviewing Medical Opinion Evidence</u>

Because this case was filed after March 17, 2017, the revised regulations governing the evaluation of medical evidence apply.  20 C.F.R. § 416.920c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors.  20 C.F.R. § 416.920c(a).  These are: supportability, consistency, relationship to the claimant, specialization, and other factors.  20 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 416.920c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2).  The factor of supportability looks inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).  The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 416.920c (c)(2).

The ALJ is only required to articulate findings on the remining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 416.920c(b)(2)-(3).

**MEMORANDUM DECISION AND ORDER - 7**

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

II. The ALJ's Evaluation of the Opinion Evidence

The medical record contains five medical opinions or evaluations[4] assessing Petitioner's mental health and intellectual functioning after he turned eighteen.

First, Dr. Martin Seidenfeld conducted a psychological evaluation of Petitioner on July 12, 2018, at the request of the Social Security Administration. AR 410-414. Dr. Seidenfeld performed IQ testing on Petitioner, revealing a Full-Scale IQ score of 80. AR 413. Dr. Seidenfeld noted that Petitioner was "fully attentive, seemed interested in the task, and focused well" during the testing. AR 412. He diagnosed Petitioner with "mild" intellectual developmental disorder and concluded that Petitioner functioned at a "borderline level." AR 413-414. He opined that Petitioner "could probably understand simple instructions without too much difficulty" and "can concentrate reasonably well for short periods," but would be slow to adapt to any changes in routine and was "forgetful and need[ed] close and constant supervision." AR 413-414.

Second, on August 22, 2018, Dr. Dave Sanford reviewed Petitioner's medical records and Dr. Seidenfeld's report and concluded that Petitioner could perform simple, routine work with moderate difficulty when responding to changes in the work setting. AR 75-76. In issuing this

---

[4] As outlined in more detail below, the parties disagree about whether one evaluation qualifies as a medical opinion within the definition of 20 C.F.R. § 416.913(a)(2). *See infra* Section II.c.

**MEMORANDUM DECISION AND ORDER - 8**

opinion, Dr. Sanford relied heavily on Dr. Seidenfeld's findings, which he rated as persuasive. AR 72, 76-77.  Dr. Sanford affirmed that Petitioner was not disabled.  AR 77-78.

Third, on September 25, 2018, Dr. Mack Stephenson reevaluated Petitioner's medical records at the reconsideration level.  AR 424.  Dr. Stephenson stressed that Petitioner's intellectual disability was "mild" and agreed with Dr. Sanford that Petitioner could perform simple work.  *Id.*

Fourth, Dr. Anne Clohessy and three of her colleagues performed a psychoeducational evaluation of Petitioner on December 18, 2018 and January 8, 2019.  AR 541.  The purpose of this evaluation was to assess the impact of Petitioner's mental health issues on his academic performance.  *Id.*  The evaluation was conducted on behalf of the Lee Pesky Learning Center, where Petitioner went for assistance completing his GED and transitioning into the "next phase" of his education.  AR 54, 541.  During the evaluation, Petitioner underwent a battery of tests. AR 546-550.  Generally speaking, Petitioner scored better on the portions of the WAIS-IV that Dr. Clohessy and her colleagues administered than he had when tested by Dr. Seidenfeld seven months prior.  *Compare* AR 412-413 *with* AR 546.  On both this test and the other tests, Petitioner's scores ranged from very or extremely low in a handful of areas to superior or high in other areas.  AR 546-548.  Most of Petitioner's cognitive testing, however, fell somewhere within the low average, average, or high average range.  *Id.*

Based on this testing, Dr. Clohessy issued a lengthy report that (i) discussed Petitioner's academic strengths and weaknesses and (ii) made treatment and educational recommendations. AR 541-551.  At the end of her report, Dr. Clohessy wrote that Petitioner is "an intelligent young man with a great deal of potential.  With the right support in place, [Petitioner] will successfully transition after high school into further education, training, and/or job opportunities."  AR 545.

**MEMORANDUM DECISION AND ORDER - 9**

Finally, on June 24, 2019, Petitioner's therapist, Courtney Tiller, LMSW, completed a mental health questionnaire drafted by the firm representing Petitioner in his Social Security disability benefits claim.  AR 569.  This form indicates that Ms. Tiller works for Lee Pesky Learning Center.  *Id*.  Petitioner began seeing Ms. Tiller for counseling in November 2018.  *Id*.  Based on her treatment of Petitioner and on Dr. Clohessy's testing, Ms. Tiller concluded that Petitioner suffers from generalized anxiety disorder, persistent depressive disorder, and specific learning disorder with impairment in mathematics.  *Id*.  Ms. Tiller opined that Petitioner had limitations across almost all mental domains because of these conditions.  AR 570-571.  While her findings are too numerous to restate in full here, Ms. Tiller determined that Petitioner had marked or extreme limitations in numerous domains, such as adapting to changes, sequencing multi-step activities, completing tasks in a timely manner, and working a full day without rest breaks.  *Id*.  Ms. Tiller further opined that Petitioner had moderate limitations in being aware of hazards; understanding and learning terms, instructions, or procedures; sustaining an ordinary work routine; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness, among other domains.  AR 570-571.

Relevant here, Ms. Tiller concluded that Petitioner's "attention and concentration would be impaired to such a degree that he could not be expected to perform even simple work tasks" during thirty percent of a standard workweek.  AR 572.  In addition, Ms. Tiller asserted that Petitioner would miss more than two days a month of work because of his mental impairments.  *Id*.

These opinions presented a genuine conflict regarding Petitioner's mental health functioning which the ALJ had a duty to reconcile.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within

**MEMORANDUM DECISION AND ORDER - 10**

the record). The ALJ resolved this conflict by crediting the opinions of the state agency reviewing consultants, whom the ALJ viewed as more consistent with Dr. Clohessy's testing and evaluation, over the opinions of Dr. Seidenfeld or Ms. Tiller. AR 29-30. Petitioner raises several interrelated attacks on this decision. None are persuasive.

>  a. *The ALJ reasonably evaluated and rejected the opinions of Ms. Tiller.*

The primary thrust of Petitioner's appeal is that the ALJ should have credited Ms. Tiller and incorporated the extensive mental limitations she endorsed into the RFC. The ALJ, however, provided a litany of reasons and citations, both at Step Two and in crafting the RFC, for finding these limitations excessive. AR 21-22, 26-29. For example, in the section of the decision discussing the consistency of Ms. Tiller's opinions, the ALJ provided the following examples of Petitioner having less depression and anxiety and generally greater intellectual functioning than Ms. Tiller's report would suggest:

- During Dr. Seidenfeld's evaluation, Petitioner had good eye contact and euthymic mood. AR 29 (citing AR 410).

- Petitioner was able to engage in three hours of cognitive testing with Dr. Clohessy before becoming fatigued.[5] AR 29 (citing AR 542).

- Dr. Clohessy's testing indicated that Petitioner has strong reading fluency, reading comprehension, writing abilities, and general content knowledge. This includes generally average test scores for information processing. AR 29 (citing AR 544 and 546).

---

[5] Petitioner maintains that this statement is a "false" depiction of Dr. Clohessy's report. The Court disagrees. Dr. Clohessy noted that Petitioner "ran out of steam after almost three hours of testing and one subtest was interrupted at this request so that it could be completed in another session with renewed energy." AR 542.

**MEMORANDUM DECISION AND ORDER - 11**

- In July 2019, Petitioner told his treating doctor he was not feeling down or depressed. This doctor did not note any abnormalities during a routine mental status evaluation. AR 29 (citing AR 579-580).

As for the supportability of Ms. Tiller's opinions, the ALJ found that her questionnaire was less reliable than the opinions of the reviewing agency doctors because Ms. Tiller relied mostly on therapy sessions to form her opinions. AR 29. These sessions "did not contain any mental status examinations and were primarily focused on encourag[ing] [Petitioner] to be more active and to push boundaries." *Id*.

Petitioner does not contest that this analysis appropriately focused on the supportability and consistency of Ms. Tiller's opinions as required by 20 C.F.R. § 416.920c(b)(2). Instead, Petitioner spends multiple pages dissecting and rehashing the record and arguing that none of the reasons the ALJ provided for preferring the opinions of the agency doctors over Ms. Tiller's opinions were supported by substantial evidence.

As part of this argument, Petitioner highlights various parts of the record that he believes favor a finding of disability. For example, Petitioner stresses Dr. Seidenfeld's statement that his test scores suggest "he has a hard time making practical use of what he knows and learns." Pt.'s Br. at 12 (Dkt. 19). Similarly, Petitioner highlights Dr. Clohessy's recommendations for academic success, while discounting or downplaying her opinions about his strengths in reading, writing, general knowledge, and other areas. *Compare* Pt.'s Br. at 14 (Dkt. 19) *with* AR 542-545 (calling Petitioner "intelligent" and noting his many academic strengths, including a "high vocabulary," solid working memory, "impressive prosody," and the ability to connect with others).

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner also revisits the parts of the record that the ALJ viewed as indicative of Petitioner's ability to perform simple work and seeks to recast this evidence as consistent with a finding of disability. For instance, Petitioner argues that running out of steam after three hours of standardized testing is consistent with Ms. Tiller's opinions about his inability to concentrate on simple work tasks thirty percent of the time. Pt.'s Br. at 13 (Dkt. 19). In addition, Petitioner contends that Dr. Bell's medical records – in which Petitioner reported no ongoing depression and had a normal mental status evaluation – are nevertheless generally consistent with Ms. Tiller's opinions. Pt.'s Br. at 15-16 (Dkt. 19).

The Court does not find Petitioner's competing interpretation of the record, including Dr. Clohessy's testing, convincing. But that is ultimately beside the point. The existence of an alternative reading of the record does not justify Petitioner to relief on appeal. The role of the Court in reviewing the Social Security Commissioner's decisions is "a limited one." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence supports *the ALJ's* findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). In determining whether such evidence exists, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, the medical record does not definitively establish how severely Petitioner is limited by his intellectual and learning disorders. Mr. Tiller endorsed more extreme mental limitations based on her counseling of Petitioner than the limitations found by the agency doctors, who

**MEMORANDUM DECISION AND ORDER - 13**

reviewed Petitioner's medical record and his full-scale IQ testing. The Court does not agree with Petitioner that the ALJ acted unreasonably in the face of these ambiguities.

As outlined above, the ALJ rationally concluded that Ms. Tiller's opinions about Petitioner's anxiety, depression, and intellectual functioning stood in tension with other evidence in the record. This evidence included his variable, but often average test scores; his numerous academic strengths, as identified by Dr. Clohessy; and his failure to display or report any signs of ongoing depression to other doctors or evaluators. AR 29. The ALJ also reasonably and correctly noted that Ms. Tiller's opinions were not supported by any mental status evaluations or other, more objective measures of Petitioner's functioning.[6] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (discussing the difference between relying entirely on a patient's self-reports and using clinical interviews, mental status evaluations, or other objective tools to assess a patient's psychological condition).

---

[6] Petitioner repeatedly claims that the ALJ's comparison of the medical evidence to the medical opinions involved the ALJ erroneously substituting his "lay" opinion for the opinions of the medical providers. Pt.'s Br. at 12, 17, 19 (Dk.t 19). This proposition is without merit. It is well-settled that it is the ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). It is also well-settled that it is the responsibility of the ALJ to determine the credibility of the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is "is entitled to draw inferences logically flowing from the evidence" and "need not substitute the judgment of expert witnesses for his own"). To make these determinations, an ALJ must, by necessity, analyze, assess, and draw conclusions from the available medical evidence. Where these inferences are unreasonable or overly speculative, they may be subject to challenge on appeal. This does not mean, however, that all inferences are suspect or, stated differently, that all of an ALJ's findings regarding a claimant's abilities or the reliability of a medical opinion must be backed by the opinion testimony of another medical expert in order to be valid. *Patterson v. Saul*, 812 F. App'x 506, 508 (9th Cir. 2020) (unpublished) ("Patterson's contention that the ALJ was 'playing doctor' ignores that consideration of medical records is part and parcel of what an ALJ is supposed to do."). Petitioner's arguments to the contrary misapprehend the role of the ALJ in evaluating the persuasiveness of the medical opinion evidence.

**MEMORANDUM DECISION AND ORDER - 14**

Taken together these constituted valid reasons for preferring the opinions of the state agency consultants over the more dire opinions of Ms. Tiller. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole."). The Court may not, therefore, replace the ALJ's analysis with its own or Petitioner's reweighing of the record.

> b. *The ALJ's evaluation of Dr. Seidenfeld's opinions was also supported by substantial evidence.*

The ALJ provided virtually identical reasons for finding Dr. Seidenfeld's opinions unpersuasive as for rejecting Ms. Tiller's opinions. AR 28-29. Given this overlap, Petitioner jointly argues that the ALJ erred in evaluating both Ms. Tiller and Dr. Seidenfeld's report. Pt.'s Br. at 10-16 (Dkt. 19). This joint challenge fails for the reasons outlined above.

> c. *Because Dr. Clohessy did not issue a medical opinion, the ALJ was not required to evaluate the supportability or consistency of her recommendations under 20 C.F.R. § 416.920c.*

In the middle of his discussion of Ms. Tiller's and Dr. Seidenfeld's opinions, Petitioner asserts that the ALJ erred in refusing to treat Dr. Clohessy's recommendations as a medical opinion. Pt.'s Br. at 15 (Dkt. 19). Petitioner, however, does little to develop this argument or explain why Dr. Clohessy's recommended strategies qualify as a medical opinion within the meaning of the regulations.

Under the new regulations, "a medical opinion is a statement from a medical source about what [a petitioner] can still do despite [his] impairment(s) and whether [petitioner has] one or more impairment-related limitations or restrictions" in his ability to work, including the ability to perform the mental demands of work activities. 20 C.F.R. § 416.913(a)(2). Here, Dr.

**MEMORANDUM DECISION AND ORDER - 15**

Clohessy provided a detailed assessment of Petitioner's functioning as it relates to his academic performance, strengths, and needs. AR 541-552. This included a list of recommendations and "specific strategies" to help Petitioner finish his high school education and transition to higher education, training, or job opportunities. AR 545, 552. For example, Dr. Clohessy wrote that "one-and-a-half to two-times the typically allotted time is a common accommodation for students with learning/processing needs." AR 552. She also suggested that Petitioner's teachers "take advantage" of Petitioner's "exceptional knowledge base by tying new concepts to ideas/concepts he already knows." AR 545. Further, she encouraged Petitioner to optimize his sleep, use the services of Lee Pesky Learning Center, and explore other community resources. AR 552. The Court agrees with Respondent that these recommendations and strategies for optimum academic success do not qualify as a medical opinion under 20 C.F.R. § 416.913. The ALJ was not, therefore, required to evaluate their supportability or consistency.

Nor was the ALJ required to provide reasons before declining to incorporate them into the RFC. *See Rounds*, 807 F.3d at 1006 ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.") and *Valentine v. Comm'r SSA*, 574 F.3d 685, 692 (9th Cir. 2009) (an ALJ did not err in excluding a doctor's recommendations for coping with PTSD from the RFC because these recommendations were not a statement of the claimant's functional capacity); *see also* 20 C.F.R. § 416.945(a)(1) (a claimant's RFC reflects "the most" the claimant "can still do despite" his limitations).

    d. *The ALJ was not required to discuss § 416.920c's tie-breaking factors.*

As part of his challenge to the ALJ's evaluation of the medical evidence, Petitioner contends that the ALJ erred in failing to discuss § 416.920c's three tie-breaking factors before deciding which medical opinions to credit. Pt.'s Br. at 10-11, 20 (Dkt. 19). The regulations,

however, only require an ALJ to articulate findings on the subsidiary factors where two conflicting opinions are "equally well-supported . . . and consistent with the record." 20 C.F.R. §§ 416.920c(b)(2)-(3). Here, the ALJ reasonably found the state agency opinions to be more supported and consistent with the record than any of the other medical opinions. AR 28-30. The ALJ was not, consequently, required to articulate findings regarding treatment relationship, specialization, or any other factors.

      e. *The ALJ fairly incorporated opinions of agency doctors into the RFC.*

Throughout his briefing, Petitioner occasionally questions the reliability of the reviewing agency doctors, while elsewhere arguing that their opinions supported a finding of disability. *Compare* Pt.'s Br. at 5 (Dkt. 19) (suggesting the opinions are outdated) *with* Pt.'s Br. at 8-9 (Dkt. 19) (arguing that the opinions, if credited, would show that Petitioner cannot sustain competitive work activity). To the extent Petitioner intended to raise a challenge to the ALJ's interpretation of the state agency opinions, this challenge is unavailing.

It is generally the responsibility of the ALJ to "translat[e] and incorporate[e] clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006.

Here, the state agency doctors opined that Petitioner could perform simple work. AR 75-78, 424. While Dr. Sanford found that Petitioner would have "moderate difficulty" responding to changes in the work setting, the ALJ fairly incorporated this limitation into the RFC by limiting Petitioner to a workplace with "few" changes. AR 23, 76. Petitioner has not shown that this translation is so unreasonable as to be subject to reversal under the substantial evidence standard. *See Tommasetti*, 533 F.3d at 1038 (where the ALJ's conclusions are rational, these conclusions must be affirmed).

  III. <u>Petitioner's Daily Activities</u>

**MEMORANDUM DECISION AND ORDER - 17**

In the last sub-section of his argument, Petitioner asserts that the ALJ erred in his conclusion that Petitioner's daily activities were inconsistent with a finding of disability. Pt.'s Br. at 18-19 (Dkt 19). To the extent Petitioner is seeking to attack the ALJ's adverse credibility findings, Petitioner has not preserved such a challenge for review.[7]

As the Court understands Petitioner's opening brief, however, Petitioner is only challenging the ALJ's treatment of his daily activities in the context of the ALJ's evaluation of the medical opinion evidence. Specifically, the ALJ relied on Petitioner's daily activities as one piece of evidence that favored crediting Dr. Sanford and Dr. Stephenson's opinion that Petitioner could work over the opinions of Ms. Tiller that he could not. AR 30.

Petitioner is correct that not all of his daily activities have bearing on the disability determination. Some of these activities, such as occasionally taking out the trash or watching television, provide little insight about Petitioner's mental functioning. These are not the only activities on which the ALJ relied, however, in evaluating the medical evidence. In assessing the medical evidence, the ALJ stressed that Petitioner was able to successfully socialize, liked to play board games, including complicated games like Dungeons and Dragons, and had reported dog-sitting and baby-sitting on at least one occasion. AR 21-23, 30. It was not irrational for the ALJ to conclude that these activities were more consistent with the state agency doctors'

---

[7] To preserve a challenge to an ALJ's finding for review, it is Petitioner's responsibility to develop that challenge with citations to the law and the record. *See Carmickle v. Comm'r of Social Sec. Admin*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (refusing to address an ALJ's finding where the Petitioner "failed to argue [the] issue with any specificity in his briefing."); *see also Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) (unpublished) (where Petitioner "summarily" concluded that various medical findings supported the medical opinion evidence that the ALJ had rejected, this broad assertion was insufficient to preserve the issue for review). Here, Petitioner never discusses his subjective symptom testimony. Nor does Petitioner analyze the ALJ's rejection of this testimony under the appropriate standard of review. Petitioner has accordingly waived any challenge to the ALJ's rejection of the testimony.

**MEMORANDUM DECISION AND ORDER - 18**

opinions that Petitioner can perform simple work, than Dr. Seidenfeld's statement that Petitioner would need "close and constant supervision" or Ms. Tiller's belief that Petitioner cannot be trusted to maintain attention and concentration for thirty percent of the workday. *See Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (where the ALJ's interpretation of a claimant's activities is rational, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interpretation more favorable" to the claimant).

Even if the ALJ was wrong in relying on this information, however, any error in this part of the ALJ's decision was harmless. *See Batson*, 359 F.3d at 1197 (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where the ALJ provided several other valid reasons for the decision). As outlined above, the ALJ fairly and reasonably considered the supportability and consistency of Dr. Seidenfeld's and Ms. Tiller's opinions, as required by 20 C.F.R. § 416.920c, and provided valid reasons for rejecting these opinions that were unrelated to Petitioner's daily activities. AR 28-29.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 19) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED:  September 6, 2022

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**